UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2287

MYRIAM E. LABORDE-GARCIA,

Plaintiff, Appellee,

v.

PUERTO RICO TELEPHONE CO., ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Cyr, Circuit Judges.

Jacqueline D. Novas with whom Jose J. Santiago, Jose L.

Verdiales and Fiddler, Gonzalez & Rodriguez were on brief for

appellants.
Guillermo Ramos Luina with whom Harry Anduze Montano was on

brief for appellee.

May 18, 1993

BREYER, Chief Judge. Myriam Laborde-Garcia claims

that Puerto Rico's Telephone Company, and several of its

officials, deprived her of her government job without

providing her with the procedural protections that the

Federal Constitution requires. Cleveland Bd. of Educ. v.

Loudermill, 470 U.S. 532 (1985). The district court entered

an injunction ordering the Company to reinstate her, and it

denied the individual defendants' claims of "qualified

immunity." The defendants appeal these orders. 28 U.S.C.

1291; Mitchell v. Forsyth, 472 U.S. 511 (1985). We affirm.

I

Background

Ms. Laborde is a career employee of the

Commonwealth-owned Telephone Company, where she has worked

since 1975. On July 7, 1986, she was injured in a work-

related auto accident. She received treatment at the State

Insurance Fund. One year later, on July 6, 1987, she

returned to work. Fourteen months after that, on September

7, 1988, Ms. Laborde went back to the Fund for treatment.

In early October (the following month) the Company wrote to

Ms. Laborde to tell her that it was dismissing her because

of absences related to her "prolonged illness."

-2-
2

Ms. Laborde, almost immediately thereafter, told

Company officials that they had made a mistake. Her latest

treatment at the Fund (in September) was not related to a

"prolonged illness." Rather, she said, the treatment (and

her absence from work) resulted from a new work-related

accident, involving moving boxes. That accident had occurred

in August 1988, only two months before her current

treatment.

This "mistake" seemed important, for Puerto Rico's

workers' compensation law requires an employer to "reserve"

the job of an injured employee undergoing treatment at the

Fund, and to "reinstate" the employee in that job, but only

if, inter alia, at the time the worker seeks reinstatement,

no more than "twelve months" have "lapse[d] . . . from the

date of the accident." P.R. Laws Ann., tit. 11, 7. (See

Appendix for complete text of statutory provision). More

than "twelve months" had "lapse[d]" from Ms. Laborde's first

accident; but only two months had "lapse[d]" from the time

of the second.

The Company, either because it did not believe Ms.

Laborde, or because it thought her factual claim made no

difference, neither changed its mind about dismissal nor

granted Ms. Laborde a hearing at which she could dispute the

-3-
3

basis for her dismissal. Ms. Laborde subsequently brought

this lawsuit. She claimed that the Company, in effect, by

depriving her of her job without any kind of prior hearing,

violated the Fourteenth Amendment's Due Process Clause. The

district court held that Ms. Laborde was correct. We agree.

II

The Law

Like the district court, we find the law clear and

in Ms. Laborde's favor. The Fourteenth Amendment says that

the Commonwealth may not deprive a person of "property

without due process of law." The Supreme Court has made

clear that "property" includes the job of a government

employee who (under local law) cannot be dismissed except

for "good cause." Loudermill, 470 U.S. at 538-39; see also

Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 262 (1st

Cir. 1987), cert. denied, 486 U.S. 1044 (1988). The Supreme

Court has also made clear that the process "due" such an

employee normally includes "'some kind of hearing' prior to

. . . discharge." Loudermill, 470 U.S. at 542. The parties

here agree that the Puerto Rico Telephone Company is a

government employer, Kauffman v. Puerto Rico Tel. Co., 841

F.2d 1169, 1173 (1st Cir. 1987), and that it can dismiss Ms.

-4-
4

Laborde, a permanent employee, only for cause. P.R. Laws

Ann., tit. 3, 1336(4). The Company, through its

officials, has told Ms. Laborde that she cannot return to

work. They did not, and have not yet, provided her with any

significant opportunity for a hearing. Hence, they have

deprived her of "property" without the "process" that the

Federal Constitution requires. Loudermill, 470 U.S at 546.

The defendants make three arguments to the

contrary. First, they say that, under Puerto Rico's law,

Ms. Laborde lost her job when she did not appear at work;

the workmen's compensation statute provides only a right to

"reinstatement" (after an absence caused by a job-related

injury). The Federal Constitution, they add, does not

protect rights to "reinstatement" because such 'rights' are

only expectations of employment, which may or may not be

fulfilled. See Board of Regents v. Roth, 408 U.S. 564, 576

(1972) (due process clause "is a safeguard of the security

of interests that person has already acquired in specific

benefits"); cf. Kauffman, 841 F.2d at 1173 (where employee

is illegally hired, property right in employment is never

created).

As a matter of Commonwealth law, however, this

argument seems wrong, for the statute itself does not

-5-
5

separate "discharge" from "reinstatement;" rather, it speaks

both of "reserv[ing]" the job of an employee under treatment

and "reinstat[ing]" that employee (under specified

conditions) on request. See P.R. Laws Ann., tit. 11, 7;

Carron-Lamoutte v. Tourism Co. of Puerto Rico, 92 J.T.S 97

(1992); In Re Hotel Da Vinci, Inc., 797 F.2d 33, 35 (1st

Cir. 1986), citing Rojas v. Mendez & Co., 84 J.T.S. 3 (1984)

(employer cannot validly discharge employee missing work due

to medical treatment during twelve-month period following

disability); but see Union Tronquistas de Puerto Rico, Local

901 v. Emery Air Freight Corp., 596 F.Supp. 829, 833 (D.P.R.

1984) (referring to separate steps of "discharge" and

"reinstatement").

Regardless, as a matter of federal law, the

argument is wrong because the workmen's compensation statute

so narrows the government's discretion to refuse to

reinstate Ms. Laborde (during the relevant twelve months)

that it provides her with a "legitimate claim of

entitlement" to that continued employment. That is to say,

local law's narrowing of the employer's discretion to decide

not to reinstate means that Ms. Laborde could reasonably

have believed, and relied upon her belief, that local law

would likely permit her to remain employed. Based on this

-6-
6

reasonable expectation created by local law, Ms. Laborde had

a federally protected "property" interest in continued

employment. See Roth, 408 U.S. at 577 (to "have a property

interest in a benefit," a person must "have a legitimate

claim of entitlement to it"); id. at 578 (implying existence

of "property" in renewal of employment if employer's

discretion to choose not to renew had been narrowed); Bishop

v. Wood, 426 U.S. 341, 344-45 (1976); cf. Kentucky Dept. of

Corrections v. Thompson, 490 U.S. 454, 463-65 (1989)

(liberty interest created if prison inmate could reasonably

expect that visit would be allowed absent occurrence of

listed conditions). Thus, whether one views the Company's

actions as taking away Ms. Laborde's present job, as

refusing to reinstate her, or (realistically) as doing both

at the same time, the Company deprived Ms. Laborde of the

sort of "property" that the Constitution protects.

Second, the defendants argue that they need not

have given Ms. Laborde any further hearing because a hearing

could not have helped her. Cf. Carey v. Piphus, 435 U.S.

247, 266-67 (1978) (recovery limited to nominal damages in

cases where employer refuses hearing but dismissal still

clearly justified). They point to a recent Commonwealth

Supreme Court case, Santiago v. Kodak, 92 J.T.S. 11 (1992),

-7-
7

which held that the Workmen's Compensation Act does not

protect a person who concededly did not report the relevant

accident until after the employer dismissed him. They claim

that, like the plaintiff in Santiago, Ms. Laborde did not

report her accident until after her dismissal.

Santiago, however, does not obviate the need for a

hearing in this case. Unlike the plaintiff in Santiago, Ms.

Laborde does not concede that she did not report the

accident until after she was dismissed. Instead, Ms.

Laborde says that she reported her second accident when she

sought treatment at the Fund on September 7, 1988, before

her employer dismissed her. She adds that the Fund

initially mixed up its paperwork, but later amended that

paperwork to reflect the occurrence of her second accident.

These facts, if proven, might well bring her case outside

the scope of Santiago's holding. Santiago, by emphasizing

the need to determine the facts, does not avoid, but,

rather, reinforces the need for a hearing.

Third, the individual defendants say they are

entitled to "qualified immunity," because, at the time of

the relevant events, their federal legal obligations were

unclear. See Anderson v. Creighton, 483 U.S. 635, 638-41

(1987) (state actors have qualified immunity unless

-8-
8

precedent would have alerted reasonable person that action

would infringe "clearly established" constitutional

principle); Harlow v. Fitzgerald, 457 U.S. 800 (1981). They

correctly point out that the Supreme Court of Puerto Rico

did not decide until 1992 (after the events here in issue)

that Commonwealth employees have a right to a pre-

termination hearing where accident-related, time-limit

issues are in dispute. Carron-Lamoutte, 92 J.T.S 97.

Carron-Lamoutte, however, simply applied pre-existing

federal constitutional requirements. In 1985, Loudermill

made clear that permanent government employees possessed the

federal right to a pre-discharge hearing. In 1987, in

Kauffman, this circuit applied Loudermill to Puerto Rico's

Telephone Company, making clear that the company must give

its career employees pre-discharge hearings (unless illegal

hiring meant they had never become career employees in the

first place). See Kauffman, 841 F.2d at 1173. Thus, in

1988, the basic law governing Ms. Laborde's claims was clear

and in her favor.

We concede that defendants, in an effort to show

that Ms. Laborde did not possess constitutionally-protected

property, have succeeded in creating an argument (based on

their interpretation of the workmen's compensation statute)

-9-
9

that is complicated, counterintuitive, and ultimately wrong.

We also concede that one who understood that argument, but

had not yet worked out the proper legal response, might

doubt whether or not the Constitution protected Ms. Laborde.

Yet, we do not believe that the potential existence of an

unusual, sophisticated, and ultimately wrong legal argument,

is sufficient, legally speaking, to muddy what, for immunity

purposes, would otherwise amount to clear legal waters.

Were that not so, given the ingenuity of the bar, "qualified

immunity" would become absolute in that it would become

available in virtually any case argued by a creative lawyer.

We conclude that the Company's legal obligation to provide

Ms. Laborde with an appropriate hearing before depriving her

of her job was clear in 1988. And, the district court's

denial of the defendants' claims of qualified immunity was

legally correct.

The Telephone Company itself makes one further

argument. It says that it is a special kind of government

entity, namely a "municipal corporation." It points out

that a "municipal corporation" cannot be ordered to pay a

Section 1983 damage award based on the actions of its

officials unless those actions are alleged to have been

taken pursuant to an official policy or custom of the

-10-
10

corporation. See Monell v. Dep't of Soc. Servs. of the City

of New York, 436 U.S. 658, 690-91 (1978). It contends that

the court's order directing it to reinstate Ms. Laborde with

back pay constitutes a "damage award." And, it claims that

Ms. Laborde's complaint is deficient in that it fails to

allege the existence of an official policy, pattern, or

practice which would justify this damage award, as Monell

requires.

Assuming much in defendant's favor for the sake of

argument, we find a short, conclusive answer to this claim

in the fact that the complaint does properly allege that the

Company itself (whether or not a municipal corporation) is

responsible for the violation of the Constitution. It

claims that all of the individual defendants "were duly

appointed officials and/or employees of [the Company];" that

each of the individual defendants was "charged with the

administration" of the Company's employment regulations; and

that each of the individual defendants acted, at all times,

"within the scope of their employment as agents and/or

employees of [the Company]." These allegations amount to an

assertion that the actions of the individual defendants

represented Company policy, for which the Company is

responsible. We do not read the complaint's conclusory

-11-
11

statement that plaintiff's "dismissal" violated "applicable

laws . . . and . . . regulations" as alleging the contrary.

Moreover, the record before us contains considerable

evidence that the employees' actions represent official

Company policy; and it contains no evidence to the contrary.

See Monell, 436 U.S. at 690 ("Local governing bodies . . .

can be sued directly under 1983 for monetary, declaratory,

or injunctive relief where . . . the action that is alleged

to be unconstitutional implements or executes [an official]

policy statement . . . or decision . . . .")

Finally, we note that the district court has not

yet calculated back pay or other damages. We realize that

the way in which Puerto Rico law applies to the facts as

eventually determined (whether or not it permits dismissal

on such facts) may affect such calculations. See, e.g.,

Carey v. Piphus, 435 U.S. at 260 & n. 15 ; Hernandez-Del

Valle v. Santa-Aponte, 575 F.2d 321, 324 (1st Cir. 1978);

Brewer v. Chauvin, 938 F.2d 860, 862 & n.2, 864 & n.4 (8th

Cir. 1991); City of Chicago v. Dep't of Labor, 737 F.2d

1466, 1471-73 (7th Cir. 1984). We express no opinion as to

the proper outcome of the question of Puerto Rico law nor

can we do so before the facts are finally determined. We

here hold only that federal law clearly required the Company

-12-
12

to provide Ms. Laborde with fair pre-termination procedures

-- procedures that would have given her a reasonable

opportunity to present facts, and make arguments, showing

that she was entitled to keep her job. The district court

held the same, and its determinations are therefore

Affirmed.

-13-
13

Appendix

"In the case of working disability according to
the provisions of this chapter, the employer shall be under
obligation to reserve the job filled by the laborer or
employee at the time the accident occurred, and to reinstate
him therein, subject to the following conditions: (1) that
the laborer or employee demand reinstatement from his
employer in his job within the period of fifteen (15) days
counted from the date the laborer or employee is discharged
from treatment, provided such demand is not made after the
lapse of twelve months from the date of the accident; (2)
that the laborer or employee be mentally and physically fit
to fill said job at the time he demands reinstatement from
his employer; and (3) that said job still exists at the time
laborer or employee demands reinstatement. (The job shall
be understood to exist when the same is vacant or is being
filled by another laborer or employee....)"

P.R. Laws Ann., tit. 11, 7 (Article 5-A of the Puerto Rico
Workers' Accident Compensation Act).

-14-
14