NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1493

CITY OF BOSTON

vs.

BOSTON POLICE PATROLMEN'S ASSOCIATION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, the city of Boston (city), appeals from a judgment of the Superior Court confirming, and denying a motion to vacate, an arbitrator's 2021 decision (2021 decision) clarifying his 2013 arbitration award (2013 award) in favor of a Boston police officer, David Williams.  On remand from the Superior Court, the same arbitrator who had issued the 2013 award issued the 2021 decision, explaining that the language of the 2013 award requiring the city to make Williams whole for all lost compensation included pay for details, overtime, and buybacks of vacation time, personal leave, and sick leave.  The city argues that (1) the Superior Court had no jurisdiction to remand the matter to the arbitrator; (2) the defendant, the

Boston Police Patrolmen's Association (union), waived any argument for those categories of damages; and (3) an award of those categories of damages would be unlawful and in violation of public policy.  We affirm.

Background.  Much of the history of this dispute was set forth in Boston v. Boston Police Patrolmen's Ass'n, 477 Mass. 434, 441 (2017) (Williams I), and need not be repeated here.  In that case, the Supreme Judicial Court rejected the city's argument that the 2013 award violated public policy by ordering Williams's reinstatement as a Boston police officer.  Id. at 447.  In August 2017, judgment after rescript entered in the Superior Court affirming the confirmation of the 2013 award.  The city reinstated Williams.

The 2013 award directed that the city was required to "make [Williams] whole for all lost wages, benefits, compensation, seniority and any other benefit, retroactive to the date he was placed on administrative leave."  The city paid Williams approximately $502,225 for his base wages, holiday pay, and shift differential retroactive to February 18, 2011, the date he was placed on administrative leave.  However, the parties disagreed as to whether the words "compensation . . . and any other benefit" in the 2013 award encompassed five categories: detail pay, overtime, and buybacks of vacation time, personal leave, and sick leave.

2

On April 17, 2018, the union filed in the Superior Court action a complaint for contempt, alleging that the city had failed to make Williams whole as required by the 2013 award. The city's answer asserted, among other things, that the 2013 award was not "a clear and unequivocal Court command" to pay Williams the disputed categories of compensation. See Birchall, petitioner, 454 Mass. 837, 852-853 (2009). At an evidentiary hearing on assessment of damages, a Superior Court judge (remanding judge) considered testimony from Williams and a union official, memoranda of the parties, and argument as to the meaning of "compensation" in the 2013 award. The remanding judge then dismissed without prejudice the union's complaint for contempt and remanded the matter to the arbitrator to address the issues raised by the parties as to the compensation the city owed to Williams under the 2013 award.[1]

On remand, the same arbitrator who had issued the 2013 award solicited briefs from the parties but did not take additional evidence. The arbitrator issued the 2021 decision, in which he clarified the meaning of the 2013 award that "[t]he

---

[1] After judgment entered dismissing the union's contempt complaint and remanding the matter to the arbitrator, the city filed a notice of appeal. A panel of this court dismissed the appeal, concluding that it was interlocutory. Boston vs. Boston Police Patrolmen's Ass'n, Mass. App. Ct., No. 2019-P-1587, slip op. at 1 (Jan. 19, 2021).

3

City . . . shall make [Williams] whole for all lost wages, benefits, compensation, seniority and any other benefit . . . ." As to each of the five disputed categories -- detail pay, overtime, and buybacks of vacation time, personal leave, and sick leave -- the 2021 decision required the city to determine the average amount of each category that Williams had earned in the three years[2] before his discharge, and to compensate him for each year of his discharge an amount equal to that average (or, for partial years, a pro rata share of the average).[3]

Initiating a new Superior Court action, the city filed a complaint seeking to vacate the award as set forth in the 2021 decision, and the union filed a counterclaim seeking to confirm it. After a nonevidentiary hearing, a different Superior Court judge (confirming judge) allowed the union's request to confirm the award as clarified by the 2021 decision, and denied the city's request to vacate it. The city appealed. After the

---

[2] When referring to the computation of averages for detail pay, overtime, and vacation buyback, the arbitrator used "calendar" years; when referring to the computations of averages for personal leave buyback and sick leave buyback, he used "fiscal" years.

[3] In the 2021 decision, the arbitrator denied the union's request to require the city to compensate Williams for postaward interest and for the possible tax consequences of his receiving a large sum of back pay in a single tax year. The parties do not raise those issues on appeal, and so we do not reach them.

4

Supreme Judicial Court's denial of direct appellate review, the case is now before us.

Discussion. 1. The Superior Court's remand to the arbitrator. The city argues that the Superior Court lacked jurisdiction because the remanding judge was without statutory authority to remand the case to the original arbitrator for clarification of the 2013 award.

General Laws c. 150C, § 8, provides:

> "Upon application of a party or, if an application to the court is pending under sections ten, eleven or twelve, on submission to the arbitrator[] by the court under such conditions as the court may order, the arbitrator[] . . . may clarify or correct an award which is so indefinite or incomplete that it cannot be performed" (emphases added).

Section 10 of G. L. c. 150C directs that the Superior Court "shall confirm an award," unless a timely application has been made to vacate the award under § 11, or to modify or correct it under § 12. Sections 11 (b) and 12 (a) require that any such application to vacate, modify, or correct an award be filed within thirty days of a party's receipt of the award.

The city argues that, once the judgment confirming the 2013 award was affirmed by the Supreme Judicial Court in Williams I, 477 Mass. at 447, the judgment was final and no application to vacate, modify, or correct the 2013 award was "pending" within

5

the meaning of G. L. c. 150C, § 8.[4]  In those circumstances, the city argues, § 8 precluded the Superior Court from remanding the matter to the arbitrator.[5]  The argument is unavailing.

We disagree with the city's premise that the arbitrator's 2021 decision was a new award.  We read the 2021 decision not as modifying or correcting the 2013 award, but rather "clarify[ing]" it because it was "so indefinite or incomplete that it cannot be performed."  G. L. c. 150C, § 8.[6]  The 2013 award had already been confirmed by the Superior Court pursuant

---

[4] The confirming judge concluded that the case was "pending" because, in dismissing the city's interlocutory appeal from the remand order, see note 1, supra, a panel of this court contemplated additional proceedings in the Superior Court. Because of our interpretation of § 8, detailed below, we need not review that conclusion.

[5] In its brief, the city expressly disavows any reliance on the doctrine of functus officio, asserting that it disputes the authority of the Superior Court to remand to the arbitrator, but not the authority of the arbitrator.  We do not reach the question of the viability of that doctrine, which is a subject of some controversy.  See Bank of Am., N.A. v. Casey, 474 Mass. 556, 562-563 & n.14 (2016).  See also Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 100 (1st Cir. 2006) (it "may well be a debatable issue in this circuit [whether] the functus officio doctrine is still good law").

[6] Because we conclude that what happened here was a clarification of the 2013 award, we do not consider the analysis of the remanding judge that the remand was to "correct" language in the 2013 award that was "imperfect in a matter of form, not affecting the merits of the controversy."  G. L. c. 150C, § 12 (a) (3).

6

to § 10, and the judgment of confirmation had been affirmed by the Supreme Judicial Court in Williams I, 477 Mass. at 447.

In G. L. c. 150C, § 8, the Legislature did not place any time limit on a judge's remand to an arbitrator for clarification, as it did in §§ 11 and 12 for a party's application to vacate, modify, or correct. In commercial arbitration cases, this court has concluded that the analogous statutory time limit "applies only to applications of parties for correction or modification, not to resubmission ordered by a court." Ciampa v. Chubb Group of Ins. Cos., 26 Mass. App. Ct. 941, 942 (1988). Cf. Connecticut Valley Sanitary Waste Disposal, Inc. v. Zielinski, 436 Mass. 263, 269 (2002) (absent court order, arbitrators did not have authority to take additional evidence and modify award). In Baxter Health Care, Corp. v. Harvard Apparatus, Inc., 35 Mass. App. Ct. 204, 209-210 (1993), this court concluded that a panel of arbitrators impermissibly had issued clarifying awards on an untimely application of a party. This court concluded, however, that it was appropriate to permit the parties on remand "to apply to the Superior Court for a submission by the court to the arbitrators for clarification of the original award," the allowance of which would be in that court's discretion. Id. at 210. Similarly, we conclude that the remanding judge had the authority to submit

7

the matter to the arbitrator to "clarify" the 2013 award, as contemplated by § 8.

Once the 2013 award was confirmed pursuant to § 10, the Superior Court's authority to enforce the 2013 award was the same as its power to enforce "any other judgment or decree." G. L. c. 150C, § 13. See Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 451 Mass. 698, 702-703 & n.5 (2008) (Sheriff). The confirmation set the stage for the union's enforcement of the award, see Massachusetts Correction Officers Federated Union v. Commissioner of Correction, 63 Mass. App. Ct. 907, 908 (2005), including by contempt proceedings, see Milano v. Hingham Sportswear Co., 366 Mass. 376, 378 (1974). "The purpose of an action to confirm an arbitration award is to enable a plaintiff to collect an unsatisfied award by enforcing the judgment that has been entered" (citation omitted). Boston Teachers Union, Local 66 v. School Comm. of Boston, 494 Mass. 519, 522-523 (2024). We conclude that the broad powers of the Superior Court to enforce the 2013 award included the power to ask the original arbitrator to clarify the meaning of the "compensation" in the 2013 award that would "make [Williams] whole."

We do not accept the city's interpretation of § 8 as meaning that, after confirmation of an award under § 10 has been affirmed on appeal, a Superior Court judge is powerless to

8

submit to the original arbitrator a request for clarification of the award unless an application to vacate, modify, or correct the award is pending. The union did not seek to vacate, modify, or correct the 2013 award. Rather, the union took the position that the language of the 2013 award requiring the city to make Williams whole "for all lost . . . compensation . . . and any other benefit" was correct, and should be interpreted to entitle Williams to the five categories of benefits at issue here. We will not interpret G. L. c. 150C to require the union to pursue a remedy it did not want just so that the remanding judge would have authority to submit the matter to the original arbitrator for clarification.

It matters to our analysis that the remand to the arbitrator was for clarification of the 2013 award. Courts have "differentiate[d] between a second award which is fundamentally inconsistent with the first award and one which simply flesh[es] out the remedy announced initially" (quotations and citation omitted). Eastern Seaboard Constr. Co. v. Gray Constr., Inc., 553 F.3d 1, 4 (1st Cir. 2008). See Locals 2222, 2320-2327, Int'l Bhd. of Elec. Workers, AFL-CIO v. New England Tel. & Tel. Co., 628 F.2d 644, 651 (1st Cir. 1980) (after arbitrator ordered reinstatement of employee, union's action to clarify amount of back pay was action to enforce or confirm original award).

It also matters to our analysis that the remand was to the original arbitrator, who did not take additional evidence. The Supreme Judicial Court has noted that it was required to "wrestle with" ambiguous findings in arbitration awards because the original arbitrator was no longer available to clarify them. Pittsfield v. Local 447 Int'l Bhd. of Police Officers, 480 Mass. 634, 638 n.4 (2018), citing Sheriff, 451 Mass. at 702 n.5. When the original arbitrator is available to explain what he meant in the 2013 award, it would be a waste of judicial resources to require a Superior Court judge to "reinvent the wheel," or to require the union to initiate and arbitrate a new labor grievance.

As the confirming judge noted, the city's interpretation of G. L. c. 150C "would run contrary to both common sense and Massachusetts's strong policy disfavoring judicial interference with arbitration awards." We agree. "[O]ur reading of § 10 comports with the Commonwealth's strong public policy interest in promoting arbitration as a means of dispute resolution." Boston Teachers Union, Local 66, 494 Mass. at 523. See Sheriff, 451 Mass. at 702-703.

2. Whether the union waived categories of compensation. Alternatively, the city argues that the union waived the issues concerning Williams's entitlement to the five categories of compensation at issue by not raising them before the Supreme

10

Judicial Court in Williams I, 477 Mass. at 440-442. We are not persuaded. Williams I was the city's appeal from the Superior Court judgment confirming the 2013 award. As appellant, the city did not raise any issue with respect to the meaning of compensation in the 2013 award; indeed, its brief did not even use the word "compensation." In those circumstances, there was no reason for the union as appellee to have raised an issue about the meaning of compensation in the 2013 award, nor, from this record, does it appear that the union could have predicted the position that the city would take as to the scope of compensation.

3. Public policy. Finally, the city argues that requiring it to pay the officer for "hypothetical unused leave" would violate public policy.

In the 2021 decision, the arbitrator interpreted the parties' collective bargaining agreement (CBA) to entitle Williams to be made whole for lost detail and overtime opportunities and for buybacks of vacation, sick leave, and personal leave, to be computed, as mentioned above, based on the averages of each that Williams took in the three years before his discharge. We defer to the arbitrator's interpretation of the CBA.

We "uphold an arbitrator's decision even where it is wrong on the facts or the law, and whether it is wise or foolish,

11

clear or ambiguous." Pittsfield, 480 Mass. at 638, quoting Boston v. Boston Police Patrolmen's Ass'n, 443 Mass. 813, 818 (2005). As the arbitrator explained, the city misplaces its reliance on White v. Boston, 57 Mass. App. Ct. 356, 357-359 (2003), and Selectmen of Framingham v. Municipal Court of Boston, 11 Mass. App. Ct. 659, 660-661 (1981), because those cases involved courts' interpretation of statutes, not an arbitrator's interpretation of a CBA.

> Judgment dated October 2, 2023, confirming arbitration award affirmed.
>
> By the Court (Ditkoff, Grant & Toone, JJ.[7]),
>
> Clerk

Entered:  April 8, 2025.

---

[7] The panelists are listed in order of seniority.